IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAULINE WARMACK, | ) | |
| as next friend of S.G.P., a minor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:05cv335-VPM |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Pauline Warmack ["Warmack"], the legal guardian of 16-year-old S.G.P., filed this action seeking review of a final decision by the Commissioner of Social Security ["Commissioner"] pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) (2004). (Doc. # 1). Upon review of the record and the briefs submitted by both parties, the court affirms the Commissioner's decision.

**I.   FACTS AND PROCEDURAL HISTORY**

Mary Spann, S.G.P.'s great-grandmother, first filed an application for Supplemental Security Income benefits on S.G.P.'s behalf in February 2003 (R. 42-44). According to Spann, S.G.P. became disabled that same month due to forgetfulness as well as emotional and behavioral problems (R. 54).

Although the earliest medical records before the court are dated 30 April 2002, a mental impairment questionnaire provided by S.G.P.'s treating psychiatrist, Fernando Lopez,

M.D. ["Dr. Lopez"], indicates that she began psychotherapy in 1997 (R. 131-34).  Vague treatment notes poorly drafted during the seven-month period from October 2003 to April 2004 mention S.G.P.'s struggle with issues related to her relationship with her mother, whom S.G.P. rarely sees, and the death of S.G.P.'s grandmother, with whom S.G.P. lived at the time (R. 135-41; Doc. # 13-1, p. 4).  S.G.P. has been diagnosed with Attention Deficit Hyperactivity Disorder ["ADHD"], combined type, and Oppositional Defiant Disorder ["ODD"] (R. 131).

S.G.P.'s application was denied initially (R. 26-28), and a hearing before Administrative Law Judge ["ALJ"] Stuart A. Wein resulted in an unfavorable decision (R. 13-19).  The Social Security Administration's Appeals Council denied S.G.P.'s request for review thus rendering the ALJ's opinion the final decision of the Commissioner (R. 3-5). Warmack then filed this timely lawsuit (Doc. # 1).

## II.   STANDARD OF REVIEW

The district court's review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]."  **Miles v. Chater**, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing **Bloodsworth v. Heckler**, 703 F.2d 1233, 1239 (11th Cir. 1983)).  The court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied," **Kelley v. Apfel**, 185 F.3d 1211 (11th Cir. 1999) (citing

*Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).[1]  This is true despite the existence of substantial evidence "contrary to the findings of the ALJ." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).  "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles*, 84 F. 3d at 1400 (citations omitted).

### III.  DISCUSSION

#### A.  *Standard for Determining Disability*

A child is considered disabled and, thus, eligible for SSI benefits when he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(I) (2004).  Furthermore, the child cannot be engaged in substantial gainful activity.  *Id*. at § 1382c(a)(3)(C)(ii).

To determine whether a child claimant is entitled to SSI benefits, the Commissioner must first determine whether the claimant is engaged in substantial gainful activity.  20

---

[1] In *Graham v. Apfel*, 129 F. 3d at 1422, the Court of Appeals stated that:

> Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See* **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

C.F.R. § 4165.924(a) (2005). If the claimant is not engaged in substantial gainful activity, the Commissioner next determines whether the claimant has "an impairment or combination of impairments that is severe." *Id.* If the claimant is found to have a severe impairment(s), the Commissioner will "review [the] claim further to see if [the claimant] ha[s] an impairment(s) that meets, medically equals, or functionally equals" a condition described in the SSA's "Listing of Impairments." *Id.*; *see also* 20 C.F.R. § 404, subpt. P, app. 1.

### B.     *Application of the Standard: The ALJ's Findings*

After discussing the legal standards and the evidence in the record, the ALJ made the following findings:

> 1. The child was born on December 23, 1989, and is currently fourteen years of age.
>
> 2. The child has never engaged in substantial gainful activity (20 CFR § 416.924(b))
>
> 3. The child has a "severe" impairment (20 CFR § 416.924).
>
> 4. The child's attention deficit hyperactivity disorder and oppositional defiant disorder do not meet or medically equal the severity of any impairment listed in Part B of Appendix 1 to Subpart P, (20 CFR §§ 416.924(d)(1), 416.925 and 416.926).
>
> 5. The child does not have an "extreme" limitation in any domain of functioning, a "marked" limitation in two domains of functioning, and does not functionally equal the severity of the listings (20 CFR §§ 416.924(d)(2) and 416.926a).

>   6. The child has not been under a "disability" at any time from the alleged onset date through the date of this decision (20 CFR § 416.906).

(R. 18-19).

Warmack disagrees and contends that the ALJ's conclusion that S.G.P. does not functionally equal a listing is not supported by substantial evidence in the record (Doc. # 13-1). Specifically, Warmack contends that the ALJ failed to accord proper weight to opinions expressed by Dr. Lopez in a medical treatment questionnaire and, consequently, erroneously concluded that S.G.P. has a "less than marked limitation" in two of six relevant "domains" of functioning (Doc. # 13-1, p. 4).

### C. *Standard for Determining Whether a Child's Impairment(s) Functionally Equals a Listing*

When determining a child claimant's functional limitations, the Commissioner evaluates the evidence in the record regarding "how [the claimant's] functioning is affected during all . . . activities." 20 C.F.R. 416.926a(b). Specifically, the Commissioner determines the extent to which a claimant's limitations affect the claimant's ability to function in each of the following six "domains":

- acquiring and using information;
- attending and completing tasks;
- interacting and relating with others;
- moving about and manipulating objects;

    •      self care; and,

    •      health and physical well-being.

*Id.* at (b)(1).

> We will decide that [the claimant's] impairment(s) functionally equals the listings if it is of listing-level severity. [The claimant's] impairment(s) is of listing-level severity if you have "marked" limitations in two of the domains in paragraph (b)(1) of this section, or an "extreme" limitation in one domain. We will not compare your functioning to the requirements of any specific listing.

*Id.* at (d).

A "marked" limitation

> interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities. [The claimant's] day-to-day functioning may be seriously limited when [the claimant's] impairment(s) limits only one activity or when the interactive and cumulative effects of [the claimant's] impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2).

An "extreme" limitation is similarly defined, but the interference with the child's activities must be "very serious[]." *Id.* at 416.926a(e)(3).

### D.   *Analysis*

Warmack's challenge is limited to the ALJ's determination that S.G.P.'s limitation(s)

in the domains of acquiring and using information and interacting and relating with others is less than marked.[2]

### 1. Acquiring and Using Information

In drawing his conclusion regarding this domain, the ALJ relied on the report of one-time consultative examiner Doug McKeown, Ph.D. ["Dr. McKeown"], who stated that S.G.P. "likely" had "low average intellectual abilities." (R. 109). He further relied on the fact that S.G.P. attends regular, as opposed to special education, classes (R. 80).

Importantly, the ALJ assigned only "little" weight to Dr. Lopez's conclusion that S.G.P. suffered a moderate limitation in this domain, despite coming to the same conclusion (R. 16). He reasoned that the basis for Dr. Lopez's conclusion, namely that he considered S.G.P. to have a marked limitation(s) in her cognitive/communicative function, conflicted with his acknowledgment that S.G.P. earned "fair" grades and overall was "contrary to the evidence as a whole" (R. 16).

Warmack's challenge to the ALJ's decision is not easily explained or explainable. As a matter of logic, in essence, she contends that the ALJ should have given Dr. Lopez's conclusion regarding her limitation in this domain more weight, which would not have altered the outcome since Dr. Lopez viewed her limitation(s) as something less than marked.

That is not the challenge posed by Warmack, however. Instead, despite failing to address the ALJ's determination that S.G.P. does not meet or medically equal a listing,

---

[2]She does not challenge his conclusion that S.G.P. does not meet or medically equal a listing.

Warmack nonetheless focuses on Dr. Lopez's opinion regarding S.G.P.'s cognitive/communicative function, which relates not to functional equivalence but to whether S.G.P. meets or medically equals the relevant listing. 20 C.F.R. § 404, subpt. P, app. 1, ¶ 112.11. Warmack fails to explain, however, how Dr. Lopez's opinion in this regard affects or should have altered *his or the ALJ's* conclusion regarding S.G.P.'s ability to acquire and use information or the analysis required for determining functional equivalence. In other words, she relies on the court to draw its own conclusion that a marked limitation in the exceedingly broad area of "cognitive/communicative function" necessarily translates to a marked limitation in the much narrower category of "acquiring and using information."

Of course, this line of reasoning leads to a conundrum: How can Warmack contend that the degree of limitation Dr. Lopez assigned to S.G.P.'s cognitive/communicative functioning does not comport with the limitation he (and the ALJ) assigned to S.G.P.'s ability to acquire and use information without conceding that Dr. Lopez's opinions were not internally conflicting, as the ALJ concluded? Of course, she cannot, and, more importantly, she does not attempt to do so, though she marginalizes the conflict, to say the least.[3]

Ultimately, the court need not decide whether Dr. Lopez's conclusions are in fact internally inconsistent to determine that the ALJ was reasonable in drawing that conclusion and Warmack is reasonable to have acknowledged it. Whether the perceived inconsistency

---

[3] Another notable facet–one of many that are notably puzzling–of Warmack's brief is her assertion that the ALJ should not have relied to any great extent on Dr. McKeown's opinion because he "did not perform any IQ testing (R. 107)" and "[h]is opinion is based solely on questioning [S.G.P.]" (Doc. # 13-1, p. 7). While true, these perceived shortfalls apply equally to Dr. Lopez's opinion.

may have been due to a scrivener's error, as Warmack speculates,[4] is irrelevant.  The ALJ was not required investigate the inconsistency because the degree of limitation he ultimately assigned is supported by substantial evidence in the record.  20 C.F.R. § 416.927(c)(2) ("If any . . . medical opinion(s) . . . is inconsistent with other evidence or is internally inconsistent, we will weight all of the evidence and see whether we can decide whether you are disabled based on the evidence we have.")

As the ALJ emphasized throughout his opinion, S.G.P. attended regular classes and received, as Dr. Lopez described it, "fair" grades.[5]  Since the onset date alleged, S.G.P. has consistently been promoted to the next grade, and S.G.P.'s testimony indicates that she generally earns Cs or better, though she claimed to have earned an F in seventh-grade history (R. 149-53).[6]

Warmack credits as significant the fact that in June 2002 Dr. Lopez indicated an

---

[4]Assuming a scrivener's error did occur, Dr. Lopez's description of S.G.P.'s grades as "fair" as well as his failure to test for or diagnose any of a number of learning disorders suggests that the error more likely occurred when he placed a check-mark in the form's box correlating to S.G.P.'s cognitive/communicative function.  *See* AM. PSYCHIATRIC ASS'N., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 49-56 (4th Ed., text rev., 2004) ["DSM-IV"] (discussing "learning disorders" in general and "reading disorder," "mathematics disorder," "disorder of written expression" and "learning disorder not otherwise specified" in particular).

[5]The relevant definition of "fair" is "moderately or passably good; free from serious defects; nearly or fully up to the average; as, he gets a *fair* salary; he has a *fair* reputation."  **Webster's New Twentieth Century Dictionary Unabridged** 658 (2d ed. 1980)

[6]A grade report, official or unofficial, was not part of the record, and the testimony offered by S.G.P. and Warmack is imprecise enough to raise serious questions regarding their credibility as witnesses.  As an aside, the court has serious doubts that a person firm in her conviction that her niece is entitled to disability due to an intellectual deficiency would leave persuasive evidence such as the child's grade reports out of the record.

intention to subject S.G.P. to "diagnostic testing" and in October 2002 the school S.G.P. attended referred her for testing to determine the need for special education classes (Doc. # 13-1, p. 7). While not utterly insignificant, Dr. Lopez's intentions and the school's referral are not nearly as revelatory as the absence in the administrative record of *any* records regarding *any* testing conducted on S.G.P. as well as S.G.P.'s continued advancement through school without repetition of a grade while attending regular classes (R. 79; 149-53).[7]

To be sure, the teacher questionnaire completed by S.G.P.'s sixth-grade home-room and math teacher, who, as the ALJ stated, noted "deficits of requiring extra help in organizational skills and possessing many gaps in skill areas to succeed in the curriculum," would support a finding that S.G.P. had a marked limitation(s) in acquiring and using information. In view of the entire record, however, the questionnaire provides only minimal support to S.G.P., and the record need not be free of evidence weighing against the ALJ's conclusion for the court to find that his conclusion is sufficiently supported by evidence in the record.

### 2. Interacting and Relating with Others

The ALJ's decision to discount Dr. Lopez's opinion regarding S.G.P.'s limitation in this domain as well as his conclusion that S.G.P.'s limitation is less than marked is supported by substantial evidence in the record. The teacher questionnaire previously mentioned

---

[7]At her hearing, S.G.P. testified that she had recently been promoted into the eighth grade (149-53). Prior to the alleged onset date, S.G.P. did repeat first grade (R. 79).

indicates that S.G.P. had few problems in this area, and S.G.P. testified to having missed only one day of school during her seventh-grade year (R. 159). In addition, as the ALJ noted, S.G.P. enjoys playing basketball, a team sport, with "cousins, [a] brother and sometimes friends" (R. 154). Furthermore, S.G.P. and Warmack testified that S.G.P. gets along with her siblings (R. 148-49, 171).

Undoubtedly, the record also reflects that S.G.P. has some behavioral problems at school, but S.G.P. and Warmack testified that the disciplinary measures implemented to address S.G.P.'s behavior have been minimal. (R. 151, 169). Finally, S.G.P.'s mental health treatment notes sporadically mention trouble at school but also note continued improvement in that area (R. 136-38).

Therefore, without even considering Dr. McKeown's opinion that "[l]imited problems are seen with regard to relating to others" (R. 107), the evidence supports the ALJ's decision to limit the weight accorded Dr. Lopez's contrary opinion. It further supports the ALJ's finding that S.G.P.'s limitation(s) in this domain is less than marked.

In conclusion, the ALJ's explanations for discounting the relevant opinions offered by S.G.P.'s treating psychiatrist reflect a correct application of the standard for evaluating such opinions. 20 C.F.R. § 927(d); **Phillips v. Barnhart**, 357 F.3d 1232, 1240 (11th Cir. 2004). Moreover, his explanations and his assessment of S.G.P.'s limitation(s) in the relevant domains are supported by substantial evidence in the record.[8]

---

[8]The court declines to consider Warmack's contention that "the ALJ's decision does not review the testimony of [S.G.P.'s] aunt or great grandmother . . ." (Doc. # 18, p. 4). This, Warmack

**CONCLUSION**

Therefore, it is hereby

ORDERED that the decision of the Commissioner is AFFIRMED.

DONE this 12th day of July, 2006.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE

---

contends in her reply to the Commissioner's brief, "constitutes reversible error," despite the fact that S.G.P.'s great-grandmother did not testify at the hearing (Doc. # 18, p. 4).  Warmack failed to raise this issue in her initial brief.